Filed 12/10/21  In re V.F. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re V.F., a Person Coming Under the Juvenile Court Law. | C093833 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>V.F.,<br><br>Defendant and Appellant. | (Super. Ct. No. JD240283) |

Presumed father of the minor (father), appeals from an order of the juvenile court terminating his parental rights and freeing the minor for adoption.  (Welf. & Inst. Code, § 366.26.)[1]  Father contends the court erred when it found the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) did not apply.  The Sacramento Department of Child,

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

Family and Adult Services (the Department) contends there was sufficient evidence to support the juvenile court's finding. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2019, the Department filed a dependency petition pursuant to section 300, subdivision (b) based on the parents' inability to provide regular care due to substance abuse. The minor was ordered into protective custody the same day that the petition was filed.

The Indian child inquiry attachment to the petition indicated the minor may have Indian ancestry through the maternal side of the family, either Cherokee or Blackfeet. The mother had indicated that a family member named T.M. was an enrolled member of a tribe or eligible for membership. The mother did not provide contact information, and there was insufficient information provided to notify the tribe.

In November 2019, the social worker contacted A.C., an adult sibling, regarding the ICWA disclosure. The sibling told the social worker that she was unaware of any Indian heritage on the maternal side. The sibling did not know the name T.M. The social worker also contacted a maternal cousin and left a voicemail asking about the family's Indian heritage. The record does not indicate that the cousin returned the call.

In November 2019, the mother filed a parental notification of Indian status form (ICWA-20), indicating she might have Cherokee or Blackfeet ancestry. She also indicated her maternal great-grandmother T.M. had Cherokee or Blackfeet heritage. Father also filed an ICWA-20 indicating he did not have Indian ancestry.

Later that month, the Department filed a detention report recommending the minor be placed in out-of-home foster care pending the jurisdiction/disposition hearing. The social worker indicated she contacted the Eastern Band of Cherokee Indians, the Cherokee Nation, and the Blackfeet Tribe via telephone and e-mail. She also attempted to contact the mother to gather more information, including visiting a reported address, but she was unable to reach the mother.

During the November 2019 hearing, the juvenile court ordered the minor detained. With respect to ICWA, the court found as to father there was no evidence the minor was an Indian child. The court ordered the Department to conduct further inquiry regarding the minor's Indian heritage.

In the December 2019 jurisdiction/disposition report, the Department reported the social worker had attempted to contact the mother three separate times in November but had no contact with her. Father failed to show up to his scheduled interview with the social worker. With respect to ICWA, the social worker contacted the Bureau of Indian Affairs (BIA) and the State Department of Social Services, Office of Tribal Affairs on December 16, 2019, and was referred to the BIA Tribal Leaders Directory for contact information for the agents of the Cherokee Nation, the United Keetoowah Band of Cherokee Indians in Oklahoma, the Eastern Band of Cherokee Indians, and the Blackfeet Tribe. On December 16, 17, and 18, 2019, the social worker contacted each of the agents via telephone and in writing. There had not yet been any response.

In the February 2020 addendum report, the Department indicated it had been unsuccessful in its attempts to contact the parents. The parents had not been visiting with the minor, and they were not participating in services. The minor was doing well in her current placement, and the caregivers were willing to adopt her. The Department recommended the court order reunification services for father but no reunification services for the mother. (§ 361.5, subds. (b)(12) & (c).) On February 6, 2020, the court sustained the petition, adjudged minor to be a dependent child of the court, and ordered out-of-home placement for the minor and reunification services for father.

In a March 2020 report, the Department noted the following tribes had informed the social worker that the minor was neither registered nor eligible to register as a tribal member: the Cherokee Nation, the United Keetoowah Band of Cherokee Indians in Oklahoma, the Eastern Band of Cherokee Indians, and the Blackfeet Tribe. The agent for the United Keetoowah Band of Cherokee Indians in Oklahoma only responded by

3

telephone, explaining that they were several months behind in sending out eligibility notices. The agent said she had searched for the mother, T.M., and the minor, and none of the individuals were registered or eligible to register. The agent said they would send a letter documenting the tribe's response within two to three months. The agent for the Cherokee Nation sent an e-mail stating that neither the mother, minor, nor T.M. appeared as enrolled members in her search of the tribal registry, and the tribe would send a formal response letter in about 90 days. The Blackfeet Tribe sent a letter stating it had not found the minor listed in its tribal roll and she was not eligible for enrollment. The agent offered to search again if the social worker was able to gather more information on the parents' ancestry. Similarly, the Eastern Band of Cherokee Indians stated in a letter that the minor (whose first name was misspelled in the letter) was neither registered nor eligible to register as a member of the tribe.

In the July 2020 permanency review report (§ 366.21, subd. (e)), the Department recommended that father's reunification services be terminated. Despite court orders requiring his participation, father had not participated in any parenting classes, individual counseling, alcohol and other drug assessment, substance abuse treatment, or substance abuse testing. Neither the mother nor father was visiting with the minor. The Department had not had contact with the mother.

On August 6, 2020, the court continued the permanency hearing (§ 366.21, subd. (e)) and found that ICWA did not apply. In September 2020, after holding a contested hearing, the court terminated father's reunification services and set the matter for a section 366.26 hearing.

In the January 2021 selection and implementation report, the Department recommended terminating the mother's and father's parental rights and freeing the minor for adoption. In March 2021, after holding a contested hearing, the court terminated parental rights and freed the minor for adoption.

4

# DISCUSSION

A.     ICWA Requirements and Standard of Review

The applicable law is summarized in two recent cases, *In re D.S.* (2020) 46 Cal.App.5th 1041 (*D.S.*) and *In re Austin J*. (2020) 47 Cal.App.5th 870, as follows:

"Congress enacted ICWA in 1978 to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement, usually in non-Indian homes. [Citation.] ICWA established minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes. [Citations.] In 2006, California adopted various procedural and substantive provisions of ICWA. [Citation.] In 2016, new federal regulations were adopted concerning ICWA compliance. [Citation.] Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. [Citations.] Those changes became effective January 1, 2019 [citation], and govern here.

"The new statute specifies the steps the [Department] and the juvenile court are required to take in determining a child's possible status as an Indian child. An 'Indian child' is defined in the same manner as under federal law, i.e., as 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe . . . .' (25 U.S.C. § 1903(4); accord, Welf. & Inst. Code, § 224.1, subd. (a) [adopting the federal definition].) The [Department] and the juvenile court have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies. (Welf. & Inst. Code, § 224.2, subd. (a) ['The duty to inquire [whether a child is or may be an Indian child] begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether [he or she] has any information that the child may be an Indian child']; Cal. Rules of Court, rule 5.481(a);

5

see [*In re*] *Isiah W.* [(2016)] 1 Cal.5th [1,] 14 ['juvenile court has an affirmative and continuing duty in all dependency proceedings to inquire into a child's Indian status'].)

"Section 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, such as the [Department], the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' " (*D.S., supra*, 46 Cal.App.5th at pp. 1048-1049, fn. omitted.)

"California law also requires 'further inquiry regarding the possible Indian status of the child' when 'the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding.' (§ 224.2, subd. (e).) The Legislature, which added the 'reason to believe' threshold for making a further inquiry in 2018, did not define the phrase. When that threshold is reached, the requisite 'further inquiry' 'includes: (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs and State Department of Social Services; and (3) contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership of eligibility in a tribe.' [Citations.]

"In addition to the inquiry that is required in every dependency case from the outset and the 'further inquiry' required under California law when there is a 'reason to believe' an Indian child is involved, a third step—notice to Indian tribes— is required under ICWA and California law if and when 'the court knows or has reason to know that an Indian child is involved.' " (*In re Austin J., supra*, 47 Cal.App.5th at pp. 883-884.)

"The juvenile court may . . . make a finding that ICWA does *not* apply because the [Department]'s further inquiry and due diligence was 'proper and adequate' but no 'reason to know' whether the child is an Indian child was discovered. (§ 224.2, subds. (i)(2), (g).) Even if the court makes this finding, the [Department] and the court have a continuing duty under ICWA, and the court 'shall reverse its determination if it

6

subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry.' (§ 224.2, subd. (i)(2).)" (*D.S., supra*, 46 Cal.App.5th at p. 1050.)

"On appeal, we review the juvenile court's ICWA findings for substantial evidence. [Citations.] But where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*D.S., supra*, 46 Cal.App.5th at p. 1051.)

B. Analysis

Father's central argument is that the Department's inquiry into the minor's possible Indian heritage was inadequate under the new statutory framework.[2] Specifically, father argues the Department did not demonstrate that it made adequate efforts to interview maternal relatives regarding the minor's Indian heritage. Father notes that the social worker only attempted to contact two maternal relatives, a maternal adult sibling and a maternal cousin regarding the family's Indian heritage. Although the social worker spoke with the adult sibling, the record indicates that the social worker only left a message for the maternal cousin. There were no other documented attempts to reach the mother's relatives.

In addition, father argues the record does not detail what ancestral information was sent to the tribes. Arguing that "[n]otice to the tribes is 'meaningless' if no information or insufficient information is presented to the tribe for it to make the determination of whether the minor is an Indian child," father contends the social worker should have documented whether she disclosed to the tribes (1) the minor's and the mother's name and dates of birth and (2) T.M.'s relationship to the mother (mother's maternal great-

---

[2] Neither party disputes that the mother's statements regarding possible tribal affiliation were sufficient to establish a reason to believe the minor is an Indian child and triggered a duty to conduct a further inquiry.

grandmother) and status as a member of a federally recognized tribe. Father also notes that one tribe misspelled minor's name in its formal response letter, suggesting they were given incorrect information. In addition, father contends the social worker should have attached a family tree.

Finally, father argues the juvenile court should have waited until all the tribes had sent formal responses. Father notes that, when the court made its finding that ICWA did not apply, the United Keetoowah Band of Cherokee Indians in Oklahoma had only given a preliminary response by telephone in March 2020, saying it would send a letter documenting its response in two to three months. Similarly, the Cherokee Nation had only responded by e-mail in March 2020, and said an official response letter would be sent in about 90 days. We conclude that substantial evidence supports the juvenile court's finding that the Department complied with its obligations pursuant to section 224.2, subdivision (e).

As explained in *D.S.*, when the Department "has a reason to believe a child is an Indian child, as in this case, it must satisfy three requirements. First, the [Department] must interview the parents, Indian custodian, and extended family members to gather relevant information, specified by statute, regarding the details of the child's birth, family members, and possible tribal affiliations. (§ 224.2, subd. (e)(1); see also § 224.3, subd. (a)(5).) Second, the [Department] must contact 'the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in, and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility.' (§ 224.2, subd. (e)(2).) Third, the [Department] must contact 'the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.' (*Id.*, subd. (e)(3).) The [Department's] contact with the tribe 'shall include sharing information identified by the tribe as necessary for the tribe to

8

make a membership or eligibility determination, as well as information on the current status of the child and the case.' (*Ibid.*)" (*D.S., supra*, 46 Cal.App.5th at pp. 1052-1053.)

The record supports the juvenile court's finding that the Department complied with these requirements. With respect to the Department's duty to interview extended family members (§ 224.2, subd. (e)(2)), ICWA and California define the term to include the minor's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent" (25 U.S.C. § 1903(2); § 224.1, subd. (c)). The Department complied with its obligations by interviewing the maternal adult sibling and attempting to contact the maternal cousin. Based on the adult sibling's statement that she was unfamiliar with the name T.M. and was unaware of any familial Indian heritage, the Department reasonably could conclude that no further inquiry was needed because there was no additional information of value to obtain from other relatives. (See *D.S., supra*, 46 Cal.App.5th at p. 1053 [the Department "is not required to 'cast about' for information or pursue unproductive investigative leads"].)

Moreover, the Department fulfilled its obligation to contact the pertinent tribes and share the information the tribe identifies as "necessary for the tribe to make a membership or eligibility determination." (§ 224.2, subd. (e)(2)(B), (C).) After confirming the appropriate tribal and contact information from the BIA and the State Department of Social Services, Office of Tribal Affairs, the social worker contacted the agents via telephone and in writing of the Cherokee Nation, the United Keetoowah Band of Cherokee Indians in Oklahoma, the Eastern Band of Cherokee Indians, and the Blackfeet Tribe. Although the Department could have documented some of its efforts in more detail, father points to no legal authority requiring the Department to submit copies of its specific correspondence with the tribes when formal ICWA notice has not yet been triggered under section 224.3. (§ 224.2, subd. (d).) Given each tribe's response that the minor was neither a registered member nor eligible for enrollment, it was reasonable for the court to infer that the Department had provided the necessary information to the

9

tribes.  (§ 224.2, subd. (e)(2)(C).)  We further note that the mother (1) failed to provide any contact information or further details for T.M. (other than her relationship as maternal great-grandmother) and (2) did not respond to the Department's additional attempts to talk with her.  Although two of the tribes did not provide a formal notice, and one tribe misspelled the minor's first name, we decline father's invitation to find that these clerical issues made it unreasonable for the court to find that the Department had met its obligations.

In sum, the juvenile court's finding that the Department completed its further inquiry is supported by the evidence.  There is also substantial evidence supporting the court's finding that there was no reason to believe or know that ICWA applies.

**DISPOSITION**

The juvenile court's order is affirmed.


/s/
RAYE, P. J.



We concur:



/s/
HULL, J.



/s/
KRAUSE, J.